## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

LORI ANN THOMAS,          )
                                 )
        **Plaintiff,**         )
                                 )
**vs.**                      )     **Case No. 08-CV-293-TLW**
                                 )
**MICHAEL J. ASTRUE,**       )
**Commissioner of Social Security,**    )
                                 )
        **Defendant.**     )

## ORDER AND OPINION

Plaintiff Lori Thomas seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §1382.  In accordance with 28 U.S.C. § 636 (c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 12].

### Background

Plaintiff was born on July 3, 1972 and was 32 years old on the date of the hearing before the Administrative Law Judge ("ALJ").  [R.20, 60].  Plaintiff earned a GED in 1988 and attended Vo-Tech, studying ten-key computer operation.  [R.67, 103].  Plaintiff was married for three years.  She was divorced at the time of her SSI application.  Plaintiff's former husband owned a bar in 2000.  During their marriage plaintiff assisted her husband working at the bar as a cashier and bartender.

---

[1] Plaintiff's application for SSI was denied initially and on reconsideration.  A hearing before Administrative Law Judge ("ALJ ") John Volz was held on December 6, 2007.  [R.218].  By decision dated December 21, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 15].  The Appeals Council denied plaintiff's request for review on March 21, 2008.  [R. 4].  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

[R.103, 234].  She has worked as a home health aid, and as a server for Kentucky Fried Chicken.

[R. 222].  Plaintiff last worked as a waitress for Scott's Tasty Burgers.  [R. 61, 64].  Plaintiff lives

in a garage apartment owned by an elderly lady she refers to as "grandma."  [R. 240].  She handles

her own daily living activities, cares for dogs, shops and does her own banking.  [R. 93].  She does

not drive.  [R. 119].  In her application, plaintiff claimed to be disabled since January 1, 1981

because of a fast heart rate.  [R.63].  At the hearing, counsel amended her onset date to the date of

her SSI application.  [R. 221].  Plaintiff denies that her disability causes her pain or other symptoms.

[R. 63].  Plaintiff has a limited history of medical care and a limited history of taking prescription

medication.  [R. 96].  Plaintiff states she does not take medicine because it is too expensive.  She

does not utilize free medical clinics because it would be an imposition on the clinic when "they're

not even my family."  [R. 243].  At the hearing, counsel advised that in 2004, plaintiff was diagnosed

with a bipolar disorder which counsel claimed contributed to her disability.  [R. 227].  Due to limited

medical records, plaintiff was referred by the Disability Determination Division for a mental

evaluation.  [R. 103].  There is no evidence that plaintiff was referred for a physical evaluation.

In assessing plaintiff's qualification for SSI, the ALJ found at step one that plaintiff has not

engaged in any substantial gainful activity since January 24, 2005, the application date.  [R. 17].

At step two, the ALJ determined plaintiff's severe impairment to be recurrent arrhythmia

[irregular heartbeat].  [R. 17].  The ALJ found plaintiff's mental impairment to be adjustive disorder

with anxious mood.  He found that her mental disorder caused only minimal limitation in plaintiff's

ability to perform basic mental work activities and therefore was non-severe.  [R. 17].  In so finding,

the ALJ considered the mental RFC performed by Janice Smith Ph.D. that plaintiff has no mental

limitation in activities of daily living, social functioning, concentration, persistence or pace and she

2

has experienced no episodes of mental decompensation.  [R. 17,117].

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ addressed the following impairments.  First, the ALJ found:  (1) plaintiff's near syncope [sudden loss of strength] has not been associated with her arrhythmia as required under listing 4.05 [R. 18]; (2) her recurrent arrhythmia, although severe, did not  meet the requirements of listing 4.05;[2] (3) her own statements failed to show her cardiac impairment restricted her daily activities;[3] and (4) her medicals failed to show that her cardiac impairment restricted her ability to work.[4]  Second, the ALJ determined plaintiff's non severe mental impairment (adjustive

_____

[2]  To meet the requirements of listing 4.05, plaintiff must show an association between near syncope and arrhythmia.  He relied on plaintiff's testimony that her condition did not cause near syncope:

> At the hearing, Ms. Thomas stated she has a heart murmur and that her episodes of shortness of breath can last from 5 seconds to a minute.  Asked to explain why she believed she could not work, the claimant said that she becomes fatigued and that her heart episodes are debilitating.  The episodes allegedly occur 3-5 times a month and she feels their effects for one or two days.  The effects include dizziness, nausea, numbness and tingling in her arms, and fatigue.

[R.19].

[3]  The ALJ relied on plaintiff's prior statement in her medical records.  "Ms. Thomas came before Larry Vaught, Ph.D. for a Social Security disability examination on May 24, 2005.  She told him that she limited her exertion due to her supraventricular tachycardia.  But she did not claim any further restrictions on her activities of daily living.  [R. 19].

[4]  The ALJ found:  "A myocardial perfusion study on February 17, 2006 showed a low risk to the claimant for ischemic cardiovascular events.  Dr. Roger Des Prez of the Hillcrest medical Center opined that Ms. Thomas recent symptoms were likely nonischemic.  Her resting ejection fraction was estimated at 60-65%.  On the same day, an echocardiogram indicated normal left and right ventricular size and functioning and no significant heart valve disease.  (Exhibit 9F, pgs. 18-19)."  [R. 19].

disorder with anxious mood), in combination with other impairments, caused only minimal limitation on her ability to perform sedentary work.  [R. 17].  The ALJ found:  (1) the bipolar disorder was based on her own comment rather than medical evidence;[5] (2) the medical evidence failed to show her mental disorder was disabling;[6] and (3) her shortness of breath is due to her gaining 150 pounds, lack of exercise and smoking rather than a cardiac condition.[7]  Thus, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work.  [R. 21].

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a home health aide and general clerk.  [R. 20].  The ALJ found transferability of job skills was not material to the determination of disability.  [R. 17].

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC.  He determined that if plaintiff could perform a full range of sedentary work, a finding of "not disabled" would be directed by the Medical-Vocational Guidelines ("Grid").  However, the ALJ did not apply the Grid because he found that plaintiff's capability to perform sedentary work was impeded by

---

[5]  The ALJ stated "Her allegation of being bipolar is based solely on the reporting of a psychiatrist who simply reported her own self-diagnosis.  Therefore, Jerry Easterday, M.D. gave an Axis I diagnosis of Bipolar Disorder type II 'by history.'  (Exhibit 1F, p.4)"  [R. 20].

[6]  The ALJ stated, " The claimant has no mental health counseling history, no psychiatric hospitalizations, and no listing of psychotropic medications.  (Exhibit 7E).  Dr. Vaught found her to have only a provisional Adjustment Disorder.  He saw no obvious abnormalities in her sustained concentration/persistence.  She presented with an appropriate affect and euthymic mood.  Her remote memory and her fund of general information appeared intact (Exhibit 4F)."  [R. 20].

[7]  The ALJ found, "Ms. Thomas' echocardiogram was unremarkable and her cardiac symptoms were nonischemic (Exhibit 9F, pgs. 18-19).  The preponderance of the medical documentation forces a conclusion that the claimant's shortness of breath is due primarily to her gaining of over 150 pounds since 2001, lack of exercise, and her continuing smoking."  [R. 20].

4

additional limitations.  Therefore, the ALJ consulted a vocational expert to determine the extent

plaintiff's limitations impeded her ability to perform work in the national economy.  The vocational

expert listed three jobs which met plaintiff's qualifications:  charge account clerk, optical goods

assembler and order clerk.  [R. 21].  Thus, the ALJ concluded that plaintiff was not disabled within

the meaning of the SSA.  [R. 21].  This finding was the fifth in the five step inquiry outlined in

Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[8]

## Issues Raised

On appeal plaintiff raises three issues of error:

First:       The ALJ failed to perform a proper determination at step 5 of the
             sequential evaluation process.

Second:      The ALJ failed to perform a proper evaluation at steps 2 and 3 of the
             sequential evaluation process.

Third:       The ALJ failed to perform a proper credibility determination.

## Discussion

In social security cases, plaintiff bears the burden of establishing a prima facie case of

disability at steps one through four of the five step evaluation.  Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  Once plaintiff has established a disability, at step 5 the burden shifts to the

Commissioner to show that the plaintiff retains the ability to do other work activity and that jobs the

plaintiff could perform exist in the national economy.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.

---

[8]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a
severe impairment, (3) has an impairment which meets or equals an impairment presumed by the
Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security
Regulations, (4) has an impairment which prevents her from engaging in her past employment, and
(5) has an impairment which prevents her from engaging in any other work, considering her age,
education, and work experience.  Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished)
citing Williams v. Bowen, 844 F.2d at 750-52.

1989).

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the time of her alleged disability. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

6

Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).  Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

First, plaintiff contends the ALJ did not perform a proper evaluation at step 5 because (1) the ALJ failed to include mental limitations from her non severe mental impairments in his RFC and hypothetical question; (2) the ALJ limited his hypothetical question to sedentary work without specifying any limitations as to walking, sitting, and standing; and (3) the ALJ failed to inquire whether the V.E.'s testimony was compatible with the Dictionary of Occupational Titles.

As previously discussed, the ALJ determined that plaintiff retained the RFC to perform sedentary work.  [R. 21].  The Code defines sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).  The regulations define "occasionally:"

> Occasionally means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour work day.  Sitting would generally total about 6 hours of an 8-hour work day.  Unskilled sedentary work also involves other activities, classified as 'nonexertional,' such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p.

Plaintiff claims the ALJ erred in failing to include any mental limitations in combination with other limitations in his hypothetical to the V.E.  The Tenth Circuit instructs that "[h]ypothetical questions posed to vocational experts must sufficiently relate the claimant's particular physical and

7

mental impairments.  However, this court has held that the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ, and a hypothetical question will be improper only if it was clearly deficient."  Stowe v. Shalala, 13 F.3d 407 (10th Cir, 1993) (unpublished).[9]  The ALJ posed one hypothetical question to the V.E.  In considering a person of claimant's age, vocation, vocational background, educational background, and prior work experience who could do a full range of sedentary work, would there be jobs in the regional and national economy that such a person could acquire?  [R. 247].  The V.E. answered "yes" and listed the previously noted three sedentary jobs that such a person could perform.

In his decision, the ALJ found that plaintiff's allegations of mental and physical impairments, individually and combined, were not disabling and therefore not credible.  However, the hypothetical posed by the ALJ to the V.E. assumed that plaintiff could perform "a full range of sedentary work," but in his decision, the ALJ found that plaintiff's ability "to perform all of the requirements of this level of work has been impeded by additional limitations."  [R. 21].  The ALJ's statements were not consistent.  Thus the Court finds that the hypothetical question posed by the ALJ to the V.E. was deficient in this limited regard.

Next, plaintiff claims the ALJ's assessment of plaintiff's physical RFC is defective because the record does not contain an assessment of plaintiff's specific limitations for sitting, standing, and walking.  "RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . .may cause . . .limitations or restrictions that may

_____

[9]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.

8

affect his or her capacity to do work-related. . . activities." Soc.Sec.R. 96-8p. To determine a plaintiff's RFC, the ALJ must therefore assess the person's ability to perform the "physical demands of work activity, such as sitting, standing, walking [and] lifting." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, the ALJ must determine "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuous basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform." Soc.Sec. R. 96-8p. Finally, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects if treatment, records of symptoms, and evidence from attempts to work. Id. In so doing, the ALJ "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Id.

The Court finds that the ALJ failed to adequately develop the record. Even though the record shows that plaintiff had the ability to perform regular daily activities at a slower pace, the record fails to contain evidence regarding plaintiff's allegations of fatigue and her obesity in combination with her other medically determinable impairments.

In this instance the ALJ properly determined that he could not rely conclusively on the Grids because he found that plaintiff could not perform a full range of sedentary work on a daily basis. See e.g. Baker v. Barnhart, 84 Fed. Appx. 10, 13 (10th Cir, 2003)(unpublished). The ALJ did not articulate what limitations restricted plaintiff's ability to perform a full range of work, nor did his hypothetical identify any limiting factors. Rather, her physical limitations are left to speculation. Thus, the Court finds the ALJ erred at step four because he failed to identify and assess plaintiff's functional limitations or restrictions and assess her work-related abilities on a function-by-function

9

basis.  The ALJ must assess the "physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions."  20 C.F.R. § 404.1545(b).  Because the record in this case is inadequate for the ALJ to make this assessment, the ALJ should refer plaintiff to an agency physician to complete a physical RFC assessment.

In addition, the ALJ failed to take into consideration plaintiff's complaints of fatigue and obesity.  In Baker, the Tenth Circuit stated that in determining a plaintiff's RFC, the ALJ must discuss the effect her obesity has on her exertional, postural, and social function, as required by Social Security Ruling 02-01p.[10]  Baker, 84 Fed. Appx. at 14.  In Clark v. Barnhart, 64 Fed.Appx. 688 (10th Cir. 2003) (unpublished), the Court stated that the ALJ must take into consideration plaintiff's allegations of chronic fatigue.  Id. at 691.  The ALJ mentioned plaintiff's obesity in his decision, but he made no explanation as to why he did not consider plaintiff's obesity at step four when determining plaintiff's RFC.  The ALJ did not address the credibility of plaintiff's complaints of chronic fatigue.  Upon remand, the ALJ should assess and determine whether plaintiff's obesity and fatigue, individually or in combination with her other impairments, would cause any physical limitation and if so, to specifically identify the limitation(s).

Because these matters require reversal and remand of this case, the Court need not address the other issues raised by the plaintiff on appeal.

## Conclusion

The Court makes no determination as to the merits of this case.  Although the ALJ did a

---

[10]   The regulation states in relevant part:  "[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SS Ruling 02-01p.

thorough analysis of plaintiff's medical condition as to those medical issues addressed, the ALJ failed to factor in plaintiff's allegations of fatigue and obesity.  Plaintiff's medical records are inconclusive in this regard.  On remand, the ALJ should exercise his discretionary power to order a consultative examination of plaintiff to determine her physical capabilities.  The consultative examiner should be instructed to prepare a thorough written report or statement based on the consultant's physical examination of plaintiff and a review of her medical history.  The consultant should provide opinion evidence as to plaintiff's capacity for walking, standing, sitting, bending, stooping and climbing, etc.  The opinion should include an assessment of the level of exertion that she can perform or the limitations, if any, on her movement or posture on account any medical condition or limitation, including her obesity or level of fatigue.  Based on this additional evidence, the ALJ is instructed to make a RFC determination supporting his decision with all the  evidence of record.  See e.g. Baker, 84 Fed. Appx. at 14.  To the extent the ALJ may have relied on plaintiff's daily activities, "evidence that a claimant engages in limited activities . . .does not establish that the claimant can engage in light or sedentary work activity."  Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993) citing Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).  The ALJ is further instructed to assess plaintiff's credibility in light of all the medical evidence, including plaintiff's obesity and complaints of fatigue.

ACCORDINGLY, IT IS THE ORDER OF THE COURT that this case is hereby REVERSED and REMANDED to the Commissioner of Social Security for additional proceedings consistent with this Order and Opinion.

IT IS SO ORDERED this 30th day of September, 2009.


T. Lane Wilson
United States Magistrate Judge